## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **vs.**                                  **CRIMINAL No. 16-2937-MCA**

**RUDIS ALEXANDER CORNEJO,**

    **Defendant.**

### ORDER SUPPRESSING EVIDENCE

**THIS MATTER** is before the Court on Defendant's *Motion to Suppress Evidence* filed January 27, 2017. [Doc. 26]   The Court has considered the written submissions of the parties, the evidence adduced at the April 26, 2017 evidentiary hearing, the record, and the applicable law, and is otherwise fully advised.  Defendant's *Motion* is well taken, and shall be granted.

**BACKGROUND**

Defendant Rudis Alexander Cornejo is charged with nine counts of transporting an illegal alien, contrary to 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (B)(i); and one count of conspiracy to transport an illegal alien, contrary to 8 U.S.C. § 1324(a)(1)(A)(v)(I).  [Doc. 9]  Defendant seeks to suppress the evidence against him on the ground that the traffic stop which ultimately led to the charges was not founded upon reasonable suspicion. [Doc. 26 p. 2]  The Court held an evidentiary hearing on Defendant's *Motion* on April 26, 2017.  A single witness, Leonard R. Armijo, Deputy First Class of the Bernalillo County Sheriff's Department, testified at the hearing.

1

**DISCUSSION**

**The Law Governing the Traffic Stop**

"The validity of a traffic stop under the Fourth Amendment turns on whether [the] particular officer had reasonable suspicion that [the] particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Valdez-Valdez*, 525 F.3d 987, 991 (10th Cir. 2008).  Although "[a]n officer's reasonable mistake of fact, as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a traffic stop, an officer's failure to understand the plain and unambiguous law he is charged with enforcing is not objectively reasonable." *Id.* (alterations omitted).  "The dispositive inquiry is whether state law provided the officer with an objectively justifiable basis for the stop." *Id.* at 991-92 (alterations omitted).

Deputy Armijo initiated a traffic stop based on his suspicion that Defendant had violated New Mexico's "minimum speed regulation" statute.  [Exhibit 1]  That law provides that "[a] person shall not drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or to be in compliance with law."  NMSA 1978, § 66-7-305(A) (2003).  Defendant argues that he was not driving in a manner that violated this statute.  [Doc. 26 p. 2]

**Findings of Fact**

1. On June 3, 2016, Deputy Armijo was assigned to the Interstate Enforcement Team.  The assignment entailed patrolling Interstate 40 west of Albuquerque.

2

2.  Deputy Armijo was travelling westbound near Mile Post 140 where there is a slight grade uphill.

3.  Deputy noticed two vehicles travelling in the right lane: a Chevy Tahoe (driven by Defendant) and a commercial motor vehicle.

4.  The right lane is considered the slow lane; the inside or left lane is considered the fast lane.

5.  Detective Armijo was travelling **ahead** of both vehicles, thus his observations were from his **rearview mirror**.

6.  Detective Armijo was traveling 70-75 miles per hour; and per his testimony, he was one-half a mile ahead of the Chevy Tahoe.

7.  Five thousand two hundred eighty (5,280) feet constitute one mile.

8.  Detective Armijo was two thousand six hundred twenty five (2,625) feet ahead of the Tahoe when he observed the movement of the commercial vehicle which formed the basis of the stop.

9.  In his rearview mirror, the Deputy observed the commercial vehicle, which was travelling behind the Tahoe in the right lane, abruptly change lanes and swerve into the left lane.

10. Using his rear radar, Deputy Armijo determined that the Chevy Tahoe was travelling 61 miles per hour.

11. The speed limit at that location was 75 miles per hour.

12. There was no posted minimum speed for the right lane.

13. The posted minimum for the left lane was 65 miles per hour.

3

14. Once the Chevy Tahoe crested the hill, it built speed and began travelling 71-72 miles per hour.

15. Deputy Armijo initiated a traffic stop of the Chevy Tahoe.

16. When he approached the vehicle, he encountered Defendant and told him that the minimum speed was 65 miles per hour.  This finding is taken from the audio portion of the video encounter.

17. At the hearing, Detective Armijo testified that he told Defendant that the minimum "safe" speed was 65 miles per hour.

18. No minimum speed was posted for the right lane.

19. While the Court credits the Deputy's testimony regarding the Tahoe being clocked at 61 miles per hour and that he observed the commercial vehicle swerve from the right lane into the left lane, the Court does not credit his testimony as to **why** the truck swerved.

20. At a distance of one-half mile (several football fields long), Deputy Armijo, glancing through a rearview mirror when he was otherwise required to look forward and attend to the traffic flow on a busy interstate, could not plausibly have discerned **why** the commercial truck changed lanes.

21. For example, the Deputy gave no consideration as to whether the commercial truck was speeding or was following too close to the Tahoe.

22. By his own testimony at the hearing, Deputy Armijo stated that, prior to the lane change, he did not know how far the truck was traveling behind the Tahoe.

23. Deputy Armijo testified at hearing that he did not know how close the truck was to the Tahoe because "Sir, I'm half a mile ahead of him. I couldn't see how close he was."

24. After the Tahoe was stopped, Deputy Armijo observed nine passengers in the vehicle, none of whom were wearing seatbelts.

25.  He issued Defendant a traffic citation for a violation of Section 66-7-305 on the ground that Defendant was "impeding [the] normal flow of traffic" by travelling at 61 miles per hour.

26.  An ensuing investigation into the status of Defendant's passengers led to the charges in this case.

**Analysis**

The Court's analysis is guided by two cases in which Section 66-7-305(A) provided the grounds for a traffic stop, the validity of which stop was challenged.  The first case, *State v. Mann*, 1985-NMCA-107, was decided by the New Mexico Court of Appeals.  The second, *Valdez-Valdez*, was decided by our Tenth Circuit.

In *Mann*, the defendant was travelling on a four-lane highway and was occupying the "inside lane" (also called the passing lane) which is normally occupied by faster traffic.  1985-NMCA-107, ¶¶ 3, 14.  The speed limit was 55 miles per hour, and the defendant was travelling 35 miles per hour.  *Id.* ¶ 3.  When the officer stopped the defendant for violating Section 66-7-305(A), there was other traffic in the area.  In upholding the reasonableness of the stop, the court reasoned that by travelling twenty miles per hour below the speed limit in the fast lane, the defendant was impeding the

reasonable flow of traffic because, by law, "slower traffic is directed to normally occupy the outside lane." *Id.* ¶ 14. *Mann* was distinguished by our Tenth Circuit in deciding *Valdez-Valdez*.

In *Valdez-Valdez*, the officer stopped the defendant's vehicle for travelling 45 mph in a 55 mph zone. 525 F.3d at 988. The officer testified that he had driven behind the defendant for several miles along a highway that had multiple blind curves, but he never testified that he could not have passed the defendant. *Id.* at 992. Indeed, passing was permitted in the area where the officer initiated the traffic stop. *Id.* Along the way, another vehicle started travelling behind the officer, and its driver did not pass the officer or the defendant—a fact that could, in the court's view, have been attributed to the presence of the officer more than anything else. *Id.* at 992-93 ("That the driver decided not to pass the officer hardly shows that he could not have lawfully done so. It would be a brave driver who would pass a police vehicle on a road with infrequent speed-limit signs."). While the officer also explained "that he was concerned that a slow-moving vehicle on the highway could be rear-ended by a vehicle rounding a curve 'at a high rate of speed'" the court was unpersuaded, reasoning that in such a circumstance, "[s]urely, the offender would not have been [the defendant] but, rather, the speeding car that hit [the defendant's] truck." *Id.* at 993. In holding that the officer's stop was not justified by reasonable suspicion of a violation of Section 66-7-305(A), our Tenth Circuit joined "a consensus of courts that driving at a speed moderately below the speed limit does not, without more, constitute obstructing or impeding traffic." *Id.* at 992. Finally, noting that it was not bound by lower state court's decisions, the court noted that even if *Mann* were

6

binding, "it is readily distinguishable" on the ground that "[t]he driver in that case was proceeding 20 [miles per hour] below the speed limit in the passing lane." *Valdez-Valdez*, 525 F.3d at 993.

In the present case, Defendant was travelling in the right lane 14 miles per hour less than the posted speed limit.  There was no posted minimum speed in that lane, and the minimum speed in the left lane (the fast lane) was 65 miles per hour.  Thus, Defendant's rate of speed was a mere 4 miles per hour less than the minimum required of vehicles in the fast lane.  And, by travelling in the right lane, Defendant was abiding by the statutory requirement that "a vehicle proceeding at less than the normal speed of traffic . . . shall be driven in the right-hand lane[.]"  NMSA 66-7-308(B) (1978).  Further, when Deputy Armijo first measured Defendant's speed, Defendant was travelling uphill—a fact that could objectively effect a reduction in a vehicle's speed, and when Defendant crested the hill he picked up his speed to a rate that approximated Deputy Armijo's.  These facts in no way resemble *Mann*, in which the defendant was travelling in the "fast lane" twenty miles per hour below the speed limit for no apparent reason. The facts more closely resemble those of *Valdez-Valdez* in which our Tenth Circuit considered travelling ten miles per hour less than the speed limit to be a "moderate[]" deviation which, standing alone, does not "constitute obstructing or impeding traffic." *Valdez-Valdez*, 525 F.3d at 992.

Nor does Deputy Armijo's observation of the commercial vehicle's abrupt lane change and swerving maneuver provide an "objectively justifiable basis for the stop."

*Valdez-Valdez*, 525 F.3d at 991-92 (stating the reasonable suspicion standard).  Deputy Armijo observed the commercial vehicle's maneuver in his rearview mirror from half a mile away.  The deputy's observation of the commercial vehicle's passing maneuver does not support a reasonable inference that Defendant's driving impeded the normal flow of traffic.  The fact that the commercial vehicle was able to move to the left lane in order to pass Defendant's vehicle is an indication that traffic was proceeding normally.  *See* § 66-7-308(A)(1) (requiring vehicles to travel in the right lane except when passing another vehicle that is proceeding in the same direction).  To the extent that Deputy Armijo construed the commercial vehicle's maneuver as unsafe, this fact speaks to the dangerous driving of the commercial vehicle which, it may reasonably be inferred, was following too closely before passing the Chevy Tahoe.  This fact says nothing about Defendant's driving.

In sum, neither Defendant's speed, which was minimally below the posted speed limit, nor Deputy Armijo's long-distance, rearview-mirror observation of the commercial vehicle's passing maneuver gave rise to a reasonable suspicion that Defendant's driving impeded the normal and reasonable flow of traffic contrary to Section 66-7-305(A).  Because Deputy Armijo did not have reasonable suspicion to stop Defendant, the evidence gathered as a result of the stop shall be suppressed.

**CONCLUSION**

**IT IS THEREFORE HEREBY ORDERED** that Defendant's *Motion to Suppress Evidence* filed January 27, 2017 is **GRANTED**.

8

IT IS SO ORDERED this  9th day of May, 2017 in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
**CHIEF UNITED STATES DISTRICT JUDGE**